**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Maria F. Gioia,<br><br>     Plaintiff,<br><br>  -v-<br><br>Patterson, Belknap, Webb & Tyler,<br><br>     Defendant. | 2:23-cv-08163<br>(NJC) (SIL) |
| Maria F. Gioia,<br><br>     Plaintiff,<br><br>  -v-<br><br>SouthEnd Psychiatry,<br><br>     Defendant. | 2:23-cv-08164<br>(NJC) (SIL) |
| Mariafrancesca Gioia,<br><br>     Plaintiff,<br><br>  -v-<br><br>Johnson and Johnson,<br><br>     Defendant. | 2:24-cv-1912<br>(NJC) (SIL) |
| Maria F. Gioia,<br><br>     Plaintiff,<br><br>  -v-<br><br>SouthEnd Psychiatry,<br><br>     Defendant. | 2:24-cv-2259<br>(NJC) (SIL) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Maria F. Gioia ("Gioia") has brought nine actions before this Court relating to injuries that she allegedly sustained as a result of taking Invega, a drug manufactured by a wholly-owned subsidiary of Defendant Johnson & Johnson ("J&J") and prescribed to Gioia by SouthEnd Psychiatry ("SEP"): *Gioia v. Janssen Pharm.*, No. 2:2:19-cv-4629 ("Gioia I") and *Gioia v. Janssen Pharm.*, No. 2:19-cv-5377 ("Gioia II") (together the "2019 Actions"); *Gioia v. Janssen Pharm.*, No. 2:23-cv-1187 ("Gioia III"); *Gioia v. SouthEnd Psychiatry*, No. 2:23-cv-1419 ("Gioia IV"); *Gioia v. Patterson, Belknap, Webb, & Tyler*, No. 2:23-cv-3353 ("Gioia V"); *Gioia v. Patterson, Belknap, Webb & Tyler*, No. 2:23-cv-8163 ("Gioia VI"); *Gioia v. SouthEnd Psych.*, No. 2:23-cv-8164 ("Gioia VII"); *Gioia v. Johnson & Johnson*, No. 2:24-cv-1912 ("Gioia VIII"); *Gioia v. SouthEnd Psych.*, No. 2:24-cv-2259 ("Gioia IX"). This Court dismissed Gioia I–II for failure to state a claim, Gioia III for failure to prosecute, and Gioia IV–V for lack of subject matter jurisdiction. The four currently pending cases, Gioia VI–IX, duplicate the allegations of the previously dismissed cases.

Before the Court are four pending items: (1) Gioia's failure to respond to a November 7, 2023 order to show cause in Gioia VI and VII; (2) J&J's letter requesting a pre-motion conference (Gioia VIII, ECF No. 8); (3) Gioia's motion to remand to state court (Gioia VIII, ECF No. 10); and (4) Gioia's motion to proceed in forma pauperis ("IFP") (Gioia IX, ECF No. 2). For the following reasons, the Court finds that it lacks subject matter jurisdiction over Gioia VI–IX. Accordingly, IFP is granted in Gioia IX, the complaints in Gioia VI, VII, and IX are dismissed without prejudice pursuant to Fed. R. Civ. P. 12(h)(3), and leave to amend these

2

complaints is denied. Pursuant to 28 U.S.C. § 1447(c), the complaint in Gioia VIII is remanded

to the New York State Supreme Court, Suffolk County. Gioia is warned that if any further

complaints regarding her allegations about Invega are filed in or removed to this Court, the Court

will order her to show cause why she should not be barred under 28 U.S.C. § 1651 from filing

new civil actions.

## BACKGROUND

Given the litigation history between the parties in the state and federal courts, a brief

review is warranted.

### I.     The Prior Actions

A.     The Court Dismisses Gioia I and II for Failure to State a Claim

In 2019, Gioia filed two complaints in the Supreme Court of the State of New York,

Nassau County against Janssen Pharmaceutical ("Janssen") for injuries that Gioia allegedly

sustained after taking Invega, a drug manufactured by Janssen. (Gioia I, ECF No. 1-1; Gioia II,

ECF No. 1-1.)[1] Janssen, represented by Patterson, Belknap, Webb & Tyler LLP ("PBWT"),

removed the 2019 Actions to this Court on the basis of diversity subject matter jurisdiction.

(Gioia I, ECF No. 1; Gioia II, ECF No. 1.) The parties then briefed Janssen's motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6) and on February 16, 2021, the Court dismissed Gioia's

---

[1] Gioia filed two motions in each case to remand these cases to state court and, upon denial of
her second round of motions, the Court warned Gioia that, should "she submit[] any further
frivolous filings concerning remand, the Court may sanction her by dismissing her claims with
prejudice." (*See* Mem., Gioia I, ECF No. 39 at 3.)

complaints in the 2019 Actions in one Memorandum and Order. (*See* Mem., Gioia I, ECF No. 39.)[2]

In the Memorandum and Order, the Court liberally construed Gioia's "bare-boned" complaints to allege lack of informed consent and failure to warn claims and granted Janssen's motion as to both claims. (Mem. at 2.) First, the Court dismissed Gioia's lack of informed consent claim against Janssen with prejudice because, under New York law, the duty to warn a plaintiff directly of the potential risks or side effects of taking Invega lies with a plaintiff's physician, not the drug manufacturer. (*Id*. at 4–5.) Second, the Court dismissed Gioia's failure to warn claim without prejudice because Gioia failed "to allege any facts to suggest that her treating physician was not informed of the risks associated with Invega" and because the FDA-approved package insert described the very side effects of which Gioia complained. (*Id.* at 6–8.) In an abundance of caution and in light of Gioia's pro se status, the Court granted leave to amend the failure to warn claim and explained that Gioia "must provide nonconclusory allegations as to why defendant failed to provide adequate warnings to her physician." (*Id.* at 8.)

Plaintiff filed an amended complaint in the 2019 Actions. (Gioia I, ECF No. 40; Gioia II, ECF No. 33.) The parties briefed Janssen's motions to dismiss the amended complaints and on November 21, 2021, the Court issued a Memorandum and Order granting Janssen's motions and dismissing Gioia's failure to warn claim with prejudice in both cases. (Mem., Gioia I, ECF No. 58.)[3] The Court found that Gioia's amended complaint failed to "cure the deficiencies of her failure to warn claim because the amended allegations, like the original allegations, do not

---

[2] The Court also filed the Memorandum and Order in Gioia II, ECF No. 32.
[3] Also filed in Mem., Gioia II, ECF No. 49.

identify what warnings were provided to plaintiff's physician or how the provided warnings were inadequate." (*Id.* at 4.) And, because "nearly all of the alleged side effects [Gioia] experienced are identified in Invega's FDA-approved package insert," the Court ruled that Gioia's "conclusory allegations coupled with [her] allegations of suffering from the very side effects of which [Janssen] warns, requires dismissal of [Gioia]'s claim." (*Id.* at 5–6.)

The Court also determined that further leave to amend would be futile in light of Gioia's failure to correct the deficiencies noted in the order dismissing her original complaints. (*Id.* at 6.) Judgment was entered accordingly on November 23, 2021 in each case. (Gioia I, ECF No. 60; Gioia II, ECF No. 51.) After receiving an extension of time to file an appeal, Gioia appealed to the Second Circuit. (Gioia I, ECF Nos. 61–62, Elec. Order, Jan. 19, 2022; Gioia II, ECF Nos. 53–54, Elec. Order, Jan. 19, 2022.) The Circuit dismissed her appeal on August 5, 2022 "because it lack[ed] an arguable basis in either law or fact." (Mandate, Gioia I, ECF No. 63.)

B.   The Court Dismisses Gioia III for Failure to Prosecute

Notwithstanding the dismissal of Gioia's lack of informed consent and failure to warn claims with prejudice, on February 13, 2023, Gioia filed another complaint against Janssen, this time in the Supreme Court of the State of New York, Suffolk County. (Gioia III, ECF No. 1-1.) Janssen removed Gioia III to this Court and requested a pre-motion conference in anticipation of filing a motion to dismiss the complaint because it was identical to the 2019 Actions and therefore barred by res judicata and collateral estoppel. (Gioia III, ECF Nos. 1, 11.) Janssen also asserted that the Gioia III complaint lacked merit because the failure to warn claim did not allege what warning her physicians received and how those warnings were inadequate. (Gioia III, ECF No. 11-1 at 2–3.) Janssen also requested that the Court enter a litigation injunction given that

Gioia had filed a third, repetitive lawsuit *after* her two prior complaints were dismissed on the merits and that dismissal was affirmed on appeal. (*Id.* at 3.) Gioia responded by filing a letter requesting that her complaint be withdrawn from this Court and claimed "bullying" from Janssen's lawyers. (Gioia III, ECF No. 18.)

At a conference before Magistrate Judge Locke, Janssen opposed Gioia's request to withdraw her Gioia III complaint and pressed for a litigation injunction because the case was Gioia's third attempt to pursue two previously-dismissed claims. (Gioia III, ECF No. 19.) Magistrate Judge Locke deferred ruling on Gioia's claim of unspecified "bullying," explaining that because "the Court takes such claims seriously, this conference is adjourned in order to give Plaintiff another opportunity to explain the bases for her position sufficient that it be addressed by the Court." (*Id.*) Although Gioia was informed of the adjourned teleconference date, she did not to appear. (Gioia III, ECF No. 24.) Accordingly, Magistrate Judge Locke stayed discovery in Gioia III pending determination of Janssen's request for a premotion conference and/or Gioia's motion to withdraw or remand her complaint. (*Id.*) On April 13, 2023, Janssen requested a briefing schedule for its anticipated motion to dismiss and for entry of a filing injunction; Gioia did not respond to that application. (Gioia III, ECF No. 25.)

Given this history and Gioia's apparent intention to withdraw her complaint, the Court ordered Gioia to show cause on or before October 12, 2023 why the complaint should not be dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b). (Gioia III, ECF No. 30.) The order required Gioia to explain her failure to appear at conferences, to respond to Janssen's pre-motion conference letter, and to participate in the prosecution of the case. (*Id.*) The Court also required Gioia to state whether she sought to withdraw the complaint. (*Id.*) The Court warned Gioia that

failure to timely respond to the order "will lead to the dismissal of her complaint with prejudice pursuant to Federal Rule of Civil Procedure 41(b)." (*Id.*)

Gioia did not respond to the order to show cause, which was mailed to her address of record and not returned as undeliverable. Accordingly, on November 16, 2023, the Court dismissed the Gioia III complaint with prejudice for failure to prosecute under Fed. R. Civ. P. 41(b) and judgment was entered. (Gioia III, Elec. Order, Nov. 16, 2023; Judgment, Gioia III, ECF No. 35.) Gioia did not appeal.

C.   The Court Dismisses Gioia IV–V for Lack of Subject Matter Jurisdiction

On February 22, 2023, eight days after Gioia filed Gioia III, she filed a new complaint and application to proceed in forma pauperis in this Court, this time against SEP. (Gioia IV, ECF Nos. 1–2, 11.) Shortly thereafter, on May 1, 2023, Gioia filed another complaint and application to proceed in forma pauperis naming PBWT, the law firm that represented Janssen in Gioia I–III. (Gioia V, ECF Nos. 1–2.) The Court granted Gioia's IFP applications in Gioia IV and V and, on October 12, 2023, issued a Memorandum and Order dismissing both complaints sua sponte and without prejudice for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). (Mem., Gioia IV, ECF No. 16.)[4]

Although these complaints, "like at least three of her prior complaints, relate to prior litigation arising from alleged side effects of a prescription anti-psychotic medication," the Court did not reach issue of preclusion. (Mem. at 2.) Rather, the Court determined it lacked subject matter jurisdiction under both 28 U.S.C. §§ 1331 and 1332. First, the Court found it lacked federal question jurisdiction because Gioia's claims against SEP for "medical malpractice" and

---

[4]  The Memorandum and Order was also filed in Gioia V as ECF No. 17.

"negligence" and "abuse of power" as well as her claims against PBWT for "abuse of power, bullying, malpractice, denying my civil rights to a fair trial, negligence, failure to acknowledge and realize facts and failure to do research; ignoring and bullying Pro Se Plaintiff; lying and cheating for favoritism/easier channels; manhandling; changing course of plans as and when convenient" did not arise under a federal law, treaty, or the Constitution of the United States. (Mem. at 9–10.) Second, in an abundance of caution in light of Gioia's pro se status, the Court considered whether it had diversity jurisdiction and found that it did not because "the parties are all domiciled in New York."[5] (Mem. at 10 (citing *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998) (noting that diversity is complete when the complaint "demonstrate[s] that [the plaintiff] does not share citizenship with any of the defendants.")).) Given Gioia's pattern of filing repetitive lawsuits concerning the same subject matter, the Court warned Gioia:

> [F]uture, frivolous lawsuits arising from or relating to her prior litigation involving Janssen Pharmaceutical will not be tolerated by the Court. In short, given Plaintiff's well-documented history of litigation in this Court, Plaintiff is cautioned that sanctions may be imposed, including in the form of a litigation injunction, should she continue in this course of conduct. *Should Plaintiff file another complaint arising from or relating to her prior litigation involving Janssen Pharmaceutical, the Court will order Plaintiff to show cause why a litigation bar should not be entered. Plaintiff is further warned that frivolous complaints concerning any other subject matter may also result in the Court ordering Plaintiff to show cause why a litigation bar should not be entered.*

(Mem. at 12 (emphasis added).) Judgment was entered on October 18, 2023 in each case and Gioia did not appeal in either case. (Gioia IV, ECF No. 16; Gioia V, ECF No. 18.)

---

[5]  The Court found that, at the time Gioia filed these complaints, she had alleged that she was a citizen of New York and that SEP and PBWT were also citizens of New York. (*See* Mem. & Order at 4, 10; *see also* Gioia V, Compl. ¶¶ II.B.1.a & 2.b.)

## II.     The Pending Actions

### A.  Gioia VI Against PBWT and Gioia VII against SEP

Undeterred, Gioia filed four more complaints. On October 26, 2023, just eight days after

judgment was entered in Gioia IV and V, Gioia filed another complaint against PBWT (Gioia

VI, ECF No. 1) and another complaint against SEP (Gioia VII, ECF No. 1). Gioia filed

applications to proceed in forma pauperis in both actions. (Gioia VI, ECF No. 2; Gioia VII, ECF

No. 2.) On November 7, 2023, the Court ordered Gioia to show cause in both cases within thirty

days why "an order should not be entered barring the acceptance of any future filings from

Plaintiff related to Plaintiff's litigation involving Janssen Pharmaceutical in this Court without

Plaintiff first obtaining leave of the Court." (Gioia VI, Elec. Order, Nov. 7, 2023; Gioia VII,

Elec. Order, Nov. 7, 2023.) The orders to show cause was mailed to Gioia at her address of

record, 12311 Cornerstone Lane, Princeton, New Jersey 08540. (Gioia VI, Elec. Order, Nov. 8,

2023; Gioia VII, Elec. Order, Nov. 8, 2023.) These orders have not been returned to the Court as

undeliverable. To date, Gioia has not responded to the order to show cause in either case.

### B.  Gioia VIII Against J&J

On March 15, 2024, J&J removed to this Court a complaint filed by Gioia against it on

October 25, 2023,[6] in the Supreme Court of the State of New York, Suffolk County, under Index

No. 6264459/2023. (Gioia VIII, ECF Nos. 1, 1-1.) Though difficult to decipher and comprehend,

Gioia appears to allege that J&J promoted:

> a novel drug Invega without regards to patient population or FDA protocol of
> post-approval recommendations and procedure of a post-clinical trial base of 10-
> year [indecipherable] before such lax promotion. The pharmaceutical company
> failed to warn about important side effect as well as the common outcome often

---

[6] This was the day before Gioia filed her complaints in Gioia VI and Gioia VII in this Court.

irreversible of subclinical hypothyroidism. The correlation of thyroid function on scholastic performance has been solidifiedly [sic] accepted as pivitol [sic] on aspects such as exam performance. While taking that medicine I was unknowingly why or how producing unrepresentative academic performance even if I studied and knew the material very well and it caused me to have to repeat my USMLE Step 2 exam only to pass after multiple attempts even though that isn't the most difficult of exams and I studied for longer periods of time. Residency programs inevidably [sic] rule out multiple attempt candidates most easily due to the heavily competitive nature of the Residency Match Process. Hence, I did not get into any Medical Residency Programs and had to terminate my lifelong goal and career as a physician due to pharmaceutical company negligence to patient population. FDA Post Approval Process and timeline as well as failure to warn about important side effects as well as ultimate outcome of subclinical hypothyroidism. In addition, while looking for a lawyer to pursue this case in July 2019 they pretended to be lawyers to update their database and website Invega.com with my information and medical knowledge (M.D.) without consent yet promised me $12–17 million in compensation for the losses, damage, and information (medical M.D. & experience).

(State Ct. Rec. at 2–4, Gioia VIII, ECF No. 1-1.) In the space that calls for the damages suffered as a result, Gioia wrote: "loss of career as a medical doctor + subclinical hypothyroidism + loss of [indecipherable] neural stability and facial/body expressive self-stability and representation" for which she seeks to recover a damages award in the sum of $16,999,999.00. (*Id.* at 5.)

On March 1, 2024, before Gioia VIII was removed to this Court, Gioia had filed an amended complaint against J&J alleging that "Johnson and Johnson failed to warn about important side effects and ultimate outcome of medication Invega while rapidly promoting it during preliminary phased approval by FDA which normally takes 10 years." (*Id.* at 34.) Gioia alleges that the "failure to warn about important side effects as well as ultimate outcome of subclinical hypothyroidism caused misrepresentation of my academic knowledge through misrepresentation of exam scores which caused me to have multiple attempts at exact exams while taking that medical while being disillusioned." (*Id.*) In the space that calls for the elements of the cause of action on the form complaint, Gioia wrote:

10

> Failure to warn about important side effects and ultimate outcome + widely, quickly, and vastly promoting the novel drug + pretending to be lawyers in 07/2019 when they took my medical knowledge and information to update their database and website Invega.com without my prior consent however while promising me compensation as between 12–17 million hence me suing for $16,999,999.00.

(*Id*. at 37.) This time, Gioia listed a Suffolk County address in East Patchogue on the amended complaint. (*Id.* at 38.) Gioia also listed that address on all subsequent papers that she filed in the state court, and those that were notarized show that she signed them in Suffolk County, New York. (*Id.* at 43–52.)

On March 21, 2024, J&J, represented by PBWT, filed a letter motion requesting a premotion conference in anticipation of a motion to dismiss the amended complaint and for the entry of a filing injunction. (Gioia VIII, ECF No. 8.) In this pending letter motion, J&J argues that Gioia has named J&J rather than its "wholly owned subsidiary" Jansen in an apparent effort to bypass the Court's "express warning not to bring any more cases against Janssen." (*Id.*) On March 22, 2024, the Court ordered Gioia to file a response to J&J's letter by March 29, 2024. (Gioia VIII, Elec. Order, Mar. 22, 2024.) To date, Gioia has not responded to J&J's letter. The Court's order was mailed to Gioia at her address of record in New Jersey and has not been returned to the Court as undeliverable. (Gioia VIII, Notice, Mar. 25, 2024.)

On April 1, 2024, Gioia filed a pending motion to remand Gioia VIII to the New York State Supreme Court, Suffolk County. (Gioia VIII, ECF No. 10.) Gioia includes her New Jersey and New York addresses (*id.* at 8) and asserts that she:

> has residence in both NJ and NY. In fact, most of her correspondences with this case even upon index number purchase were from/to the address where she lives with her mom 12311 Cornerstone Lane Princeton, NJ. She filed in Suffolk County Supreme Court because her fiancée lives there, she used to live there, she works there part-time, and this is where she first started the case against Jansen

11

[sic] in 2019 while living in Holbrook and then Ronkonkoma . . . .

(*Id.* at 2.) On April 11, 2024, J&J opposed the motion, arguing that there is diversity jurisdiction because it is a New Jersey citizen and Gioia is a New York citizen as is evident from her repeated assertions that she is a New York resident and various indicia of her intent to return there. (Gioia VIII, ECF No. 12 at 3–5.) J&J also requests a filing injunction against Gioia. (*Id.* at 5.)

C. Gioia IX Against SEP

On March 22, 2024, Gioia filed another complaint against SEP along with an in forma pauperis application. (Gioia IX, ECF Nos. 1–2.) Gioia alleges that, during the period December 10, 2022 through December 30, 2022, she was "assign[ed]"a "test consecutively for weeks"— which she parenthetically explains was an "at home urine collection"— which "was wrong and inapropriate [sic]," and unspecified "psychiatric medication" was "withh[e]ld[]" from her. (Compl. ¶ III, Gioia IX, ECF No. 1.) Gioia checked the box on the form complaint to invoke this Court's federal question subject matter jurisdiction and wrote "medical malpractice and negligence U.S. Code 20137" in the space that calls for "the specific federal statutes, federal treaties, and/or provisions of the United States Constitution are at issue in this case." (*Id.* ¶ IIA.) Although Gioia left blank the section on the form complaint that asks for the citizenship of each party, she included a residential address for herself in East Patchogue, Suffolk County, New York and an address for SEP in the Bronx, New York. (*Id.* ¶¶ I A–B.)

## LEGAL STANDARDS

A district court must dismiss a complaint filed by a plaintiff proceeding in forma pauperis if the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i–iii). The court "shall" dismiss the action as soon as it makes such a determination. *Id.* At the pleading stage, the court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd* 569 U.S. 108 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)).

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quotation marks omitted). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Id.* at 678–79 (citation omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels

13

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint at least once. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citations omitted). If, however, amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Id.*

## DISCUSSION

### I.     Subject Matter Jurisdiction

Notwithstanding the liberal pleading standard afforded pro se litigants, a district court "must dismiss the action" if it "determines at any time that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700– 01 (2d Cir. 2000) ("If subject matter jurisdiction is lacking, the action must be dismissed.") (citations omitted); *In re Tronox Inc.*, 855 F.3d 84, 95 (2d Cir. 2017) (noting that courts have an "independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte.") (quotation marks omitted). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Searles v. Robert*, No. 21- 2836, 2023 WL 7271832, at *1 (2d Cir. Nov. 3, 2023) (quotation marks omitted).

With these standards in mind, the Court examines subject matter jurisdiction in each of Gioia's pending cases.

### A.   The Court Lacks Subject Matter Jurisdiction over Gioia VI, Gioia VII, and Gioia IX

As an initial matter, the Court has reviewed Gioia's IFP application in Gioia IX and finds that Gioia has established that she is qualified by her financial status to commence that action

without the prepayment of the filing fee. (IFP App., Gioia IX, ECF No. 2). Therefore, the application to proceed IFP is granted.

Given that Gioia filed the complaints in Gioia VI, VII, and IX directly in this Court, she bears the burden of establishing subject matter jurisdiction. *See Searles*, No. 21-2836, 2023 WL 7271832, at *1. In each of those complaints, Gioia checked the box to invoke this Court's federal question subject matter jurisdiction. (Compl. ¶ II, Gioia VI, ECF No. 1; Compl. ¶ II, Gioia VII, ECF No. 1; Compl. ¶ II, Gioia IX, ECF No. 1.) In Gioia VI, in the space that calls for the specific provision of federal law at issue, Gioia alleged "Unauthorized practice of Law CFR 776.57 (Best interest of client + Due Process of service to legal owners) Service Process on Entities § 113 – 29-104.12: 'A represented entity may be served . . . permitted by law by serving its registered agent.'" (Compl. ¶ II.A, Gioia VI, ECF No. 1.) In Gioia VII, Gioia's response to that question was "Medical malpractice and negligence U.S. Code 20137." (Compl. ¶ II.A, Gioia VII, ECF No. 1.) In Gioia IX against SEP, Gioia responded in the same way she had in Gioia VII: "Medical malpractice and negligence U.S. Code 20137." (Compl. ¶ II.A, Gioia IX, ECF No. 1.)

None of these complaints alleges a plausible federal question.[7] Given Gioia's pro se status and in an abundance of caution, the Court has also considered whether any of the

---

[7] Indeed, the Court understands that the Gioia VI complaint references 32 CFR § 776.57, which addresses the unauthorized practice of law for attorneys practicing under the supervision of the Judge Advocate General and has no application here. Further, to the extent Gioia intended to cite 20 U.S.C. § 137 in the Gioia VII complaint, that section was repealed in 1968 and governed contracts and purchases, the executive officer, and annual reports at the National Training School for Boys which operated until May 15, 1968 when it was closed pursuant to order of the Attorney General. 20 U.S.C. § 137 Historical Notes. Thus, Gioia has no colorable federal claim under 20 U.S.C. § 137 either.

complaints plausibly allege any federal question such that subject matter jurisdiction pursuant to 28 U.S.C. § 1331 could be invoked. Even upon a liberal construction, the Court discerns no such claim.

The Court also does not have diversity jurisdiction under 28 U.S.C. § 1332 because Defendants PBWT and SEP are citizens of New York, and Gioia has failed to plausibly allege that she is not also a citizen of New York. In the Gioia VI and VII complaints, Gioia wrote that her address is 12311 Cornerstone Lane, Princeton, New Jersey 08540, but left blank the section that asks for the state where the plaintiff is a citizen. (*See* Compl. ¶¶ I, II.B.1(a), Gioia VI, ECF No. 1; Compl. ¶¶ I, II.B.1(a), Gioia VII, ECF No. 1.) Both complaints also allege that PBWT and SEP are New York citizens. (Compl. ¶ II.B.2(b), Gioia VI, ECF No. 1 (providing a New York address and alleging that PBWT is incorporated in the State of New York and has its principal place of business also in New York); Compl. ¶ II.B.2(b), Gioia VII, ECF No. 1 (alleging that SEP is located in the Bronx, New York, is incorporated in New York and also has its principal place of business there).) The Gioia IX complaint lists Gioia's address as 1 1st Street in East Patchogue, New York, 11772 and leaves blank the section of the complaint that asks for the state where the plaintiff is a citizen. (Compl. ¶¶ I, II.B.1(a), Gioia IX, ECF No. 1.) That complaint repeats the allegations that SEP is a New York corporation located in New York. (*Id.* ¶ II.B.2(b).)

The first requirement of diversity jurisdiction—that there is complete diversity of citizenship between the plaintiff and the defendants—means that a plaintiff cannot be a citizen of the same state as any of the defendants. *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005). In determining diversity jurisdiction, "a corporation is

considered a citizen of the state in which it is incorporated and the state of its principal place of

business." *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012)

(citations omitted). An individual party's citizenship depends on its domicile, which "is the place

where that individual has a true, fixed home and principal establishment, and to which, whenever

that person is absent from the jurisdiction, he or she has the intention of returning." 13E Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3612 (3d ed. 2021); *see also*

*Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019). It is well-established

that "residence alone is insufficient to establish domicile for jurisdictional purposes." *Van*

*Buskirk*, 935 F.3d at 54 (citation omitted); *accord Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100,

103 (2d Cir. 1997) ("[I]t is well-established that allegations of residency alone cannot establish

citizenship . . . .").

Here, Gioia has not met her burden of establishing that diversity jurisdiction lies in this

Court because she has not plausibly alleged that she is a citizen of New Jersey. Instead, her

complaints allege her residences, rather than her domicile.[8]  Although Gioia listed a New Jersey

address on the complaints in Gioia VI and VII, she provided a Suffolk County area phone

number and alleged that she was working in East Patchogue, Suffolk County until September 1,

2023. (*See* IFP App. ¶ 2, Gioia VI, ECF No. 2; IFP App. ¶ 2, Gioia VII, ECF No. 2.) None of the

---

[8]  Indeed, Gioia includes a telephone number in these complaints with a "631" area code, which
is the same Suffolk County area code included in the 2019 Actions where she alleged her
residence was in Suffolk County, New York. (*See* 2019 Actions, Compls.) Further, of note,
Gioia alleged that she was working in East Patchogue, New York, until September 1, 2023. (*See*
IFP App. ¶ 2, Gioia VI, ECF No. 2; IFP App. ¶ 2, Gioia VII, ECF No. 2.) However, Gioia filed
those complaints on October 26, 2023 and the Court evaluates diversity "by examining
citizenship as of the time suit is commenced." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42
(2d Cir. 2000).

complaints in Gioia VI, VII, or IX allege that Gioia intends to return to her "true fixed home and principal establishment" in New Jersey. *Van Buskirk*, 935 F.3d at 53. Indeed, Gioia later indicated in her motion to remand in Gioia VIII that she maintains residences in both New York and New Jersey. (Remand Mot. at 2, Gioia VIII, ECF No. 10.) Given that allegations of residency alone are insufficient to establish diversity jurisdiction, Gioia has not properly invoked this Court's diversity subject matter jurisdiction. *See, e.g., Jacobs v. Pat. Enf't Fund, Inc.*, 230 F.3d 565, 567 (2d Cir. 2000) (finding that plaintiffs initially failed to allege diversity in complaint because "they had alleged only the residence, and not the citizenship (or domicile), of the parties").

Because Gioia has not plausibly alleged a federal question or complete diversity, she has not met her burden of establishing that subject matter jurisdiction lies in this Court. Accordingly, the Court dismisses the VI, VII, and IX complaints without prejudice pursuant to Rule 12(h)(3), Fed. R. Civ. P. *See, e.g., Diaz v. Judge Advoc. Gen. of the Navy*, 413 F. App'x 342, 344 (2d Cir. 2011) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.") (quotation marks omitted)).

B. The Court Remands Gioia VIII for Lack of Subject Matter Jurisdiction

As the party seeking to invoke federal subject matter jurisdiction in this removal action, J&J bears the burden of establishing that subject matter jurisdiction lies in this Court. *Winter v. Novartis Pharms. Corp.*, 39 F. Supp. 3d 348, 350 (E.D.N.Y. 2014) ("In a case removed to federal court from state court, the removal statute is to be interpreted narrowly, and the burden is on the removing party to show that subject matter jurisdiction exists . . . .) (citing *Lupo v. Human Affairs Int'l, Inc*., 28 F.3d 269, 274 (2d Cir. 1994)). "All doubts should be resolved against

18

removability." *Lupo*, 28 F.3d at 274. As detailed above, "residence alone is insufficient to establish domicile for jurisdictional purposes." *Van Buskirk*, 935 F.3d at 54 (citation omitted). Courts evaluate diversity by examining the "parties' domicile at the time the complaint was filed," *Van Buskirk*, 935 F.3d at 53, and "[a]n individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). In this context, domicile is defined as "the place where a person has his true fixed home . . . and to which, whenever he is absent, he has the intention of returning." *Id.* (quotation marks and citation omitted).

J&J has not properly invoked this Court's diversity subject matter jurisdiction because it alleges only Gioia's residency, not her domicile. J&J's Notice of Removal argues that diversity jurisdiction exists because (1) Gioia's amended complaint and summons state that she was a resident of Suffolk County, (2) J&J is a New Jersey corporation, and (3) the amount in controversy exceeds $75,000. (Not. of Removal ¶¶ 5–7, Gioia VIII, ECF No. 1.) J&J fails to account for the fact that Gioia has used both a Suffolk County and New Jersey address throughout the prosecution of the state court action. For example, Gioia listed 12311 Cornerstone Lane, Princeton, New Jersey, 08540 as her address on the summons, below her signature on page 6, on the request for judicial intervention, and on her motion for default judgment. (State Ct. Rec. at 6, 8–9, 10–11, 18–19, Gioia VIII, ECF No. 1-1.) The affidavit in support of Gioia's motion for default judgment filed in the state court includes a notarization of Gioia's signature in New Jersey. (*Id.* at 10–11, 18–9.) In denying the motion for default judgment, Acting Supreme Court Justice Quinn listed both Gioia's New Jersey and Suffolk County, New York addresses, noting that "[t]he summons and complaint states Plaintiff's address is in Ronkonkoma, however, every

other document filed indicates Plaintiff's address as a New Jersey address and the documents notarized are all from a New Jersey notary." (*Id*. at 29.)

Gioia's later filings also allege her residences, rather than her domicile. For example, every paper Gioia filed in the state court, beginning with the March 1, 2024 amended complaint, lists Gioia's Suffolk County address in East Patchogue, New York. (*Id.* at 38, 43–52; *see also id.* at 32, 40 (showing that Gioia signed notarized papers in Suffolk County, New York).) Gioia's Motion to Remand states that she has two residences, one in New York and the other in New Jersey, but includes no facts suggesting that New York is the place that she intends to remain indefinitely. (Remand Mot. at 2, Gioia VIII, ECF No. 10.) Instead, she explains that, although her fiancée resides in Suffolk County, New York, and that she "used to live there," she also lives with her mother in New Jersey. (*Id.*) Contrary to J&J's argument, these facts do not reveal an intent to remain in New York indefinitely and are therefore insufficient to show her domicile in New York.

The removed action does not allege a federal question such that this Court's federal question subject matter jurisdiction could properly be invoked. The amended complaint alleges that J&J "failed to warn about important side effects and ultimate outcome of medication Invega while rapidly promoting it during preliminary phased approval by FDA" and that this failure to warn "caused misrepresentation of my academic knowledge through misrepresentation of exam scores which caused me to have multiple attempts at exact exams while taking that medical while being disillusioned." (State Ct. Rec. at 35, Gioia VIII, ECF No. 1-1.) Even upon a liberal construction, Gioia does not allege a colorable federal claim and the Court discerns none.

Instead, she continues to pursue her unsuccessful state law lack of informed consent and failure to warn claims.

Because this Court has neither diversity nor subject matter jurisdiction over Gioia VIII, it must remand this case sua sponte. 28 U.S.C. 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction [over a case removed from state court], the case shall be remanded.") Accordingly, Gioia VIII is remanded to the New York State Supreme Court, Suffolk County, pursuant to 28 U.S.C. § 1447(c). The Court does not reach whether dismissal for failure to prosecute under Fed. R. Civ. P. 41(b) is warranted where Gioia failed to respond to J&J's March 21, 2024 pre-motion conference letter in which J&J argues that Gioia has named J&J rather than Janssen in an apparent effort to bypass the Court's "express warning not to bring any more cases against Janssen." (Gioia VIII, ECF No. 8.)

## II.     Warning to Gioia

As demonstrated above, the complaints in Gioia VI–IX repeat the allegations and jurisdictional defects of the previously-dismissed complaints in Gioia I–V. Gioia cannot repeatedly file the same claims in an attempt to obtain a different result. "Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 US 180, 184 (1989). If Gioia files another complaint about the same subject matter as Gioia I–IX, including allegations arising from or relating to the medication Invega, the Court will order Gioia to show cause why she should not be barred under 28 U.S.C. § 1651 from filing new civil actions without prior permission from the Court. This warning applies to any complaints filed directly in this

Court or properly removed here.

### III.   Leave to Amend Would be Futile

"Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). Granting leave to amend here would be unproductive because even if Gioia properly alleged a basis for diversity jurisdiction, her lack of informed consent and failure to warn claims are not plausible and that determination has been affirmed on appeal. (*See* Mem., Gioia I, ECF. No. 58; Mandate, Gioia I. ECF No. 63.) Additionally, Gioia's failure to respond to this Court's orders in Gioia VI, VII, and IX raises failure-to-prosecute concerns and any further litigation between the parties arising from Gioia's use of the medication Invega would likely be precluded.[9]

### CONCLUSION

For the reasons stated above, this Court grants Gioia's motion to proceed IFP (Gioia IX, ECF No. 2) and dismisses the complaints in Gioia VI, VII, and IX without prejudice pursuant to Fed. R. Civ. P. 12(h)(3). Leave to amend these complaints is denied. Pursuant to 28 U.S.C. § 1447(c), the complaint in Gioia VIII is remanded to the New York State Supreme Court, Suffolk County. The Clerk of the Court shall: (1) forward a certified copy of this Memorandum and Order to the Clerk of the New York State Supreme Court, Suffolk County; (2) enter judgment accordingly in each case; and (3) mail a copy of this Memorandum and Order to Gioia

---

[9] Given the lack of subject matter jurisdiction, the Court does not reach whether res judicata or collateral estoppel would preclude adjudication of Gioia's present claims, or whether Gioia's failure to respond to the Court's orders merits dismissal under Fed. R. Civ. P. 41(b).

at her addresses of record in Suffolk County and New Jersey and note such mailing on the docket.

**Gioia is warned that, if she files another complaint about the same subject matter as Gioia I–IX, including allegations arising from or relating to the medication Invega, the Court will order her to show cause why she should not be barred under 28 U.S.C. § 1651 from filing new civil actions without prior permission from the Court. This warning applies to any complaints filed directly in this Court or properly removed here.**

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
      April 19, 2024

                                  /s Nusrat J. Choudhury
                                  NUSRAT J. CHOUDHURY
                                  United States District Judge